CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 16 2010

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CARLTON D. GEARHART, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:10CV00267 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| THE HARTFORD LIFE INSURANCE | ) | By: Hon. Glen E. Conrad |
| COMPANY, | ) | Chief United States District Judge |
| | ) | |
| Defendant. | ) | |

In this action, brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., the plaintiff, Carlton D. Gearhart, claims that the Hartford Life Insurance Company ("Hartford Life") wrongfully terminated his long-term disability benefits. The case is presently before the court on the parties' cross-motions for summary judgment. For the reasons set forth below, both motions will be denied and the case will be remanded to Hartford Life for a full and fair review of Gearhart's claim for disability benefits.

**Factual and Procedural Background**

Gearhart previously worked as a "Service Professional" for Ecolab, Inc. ("Ecolab"). (HL0150).[1] In this position, Gearhart was responsible for installing, servicing, and maintaining commercial dishwashing, laundry, and dispensing systems for Ecolab's customers, which included schools, hotels, restaurants, and other institutions. Ecolab classified the strength requirement of the job as "heavy," since it involved lifting up to 100 pounds and frequently lifting up to 50 pounds. (HL0152). In addition to lifting and servicing equipment, the duties of

---

[1] The court's citation to "HL" refers to the pagination used in the administrative record.

the job included selling Ecolab products; driving to appointments, meetings, and service calls; and performing office-based customer service work.

In 2008, Gearhart began to suffer from chronic back pain associated with degenerative disc disease. His family physician referred him to Edgar N. Weaver, Jr., M.D., a neurosurgeon who practices in Roanoke. On November 10, 2008, Dr. Weaver performed a lumbar decompression and stabilization procedure on the plaintiff. At some point thereafter, Gearhart began receiving short-term disability benefits.

Dr. Weaver initially estimated that Gearhart would need to refrain from working until March 9, 2009. He noted that the plaintiff's return to work would be determined at each post-operative visit based on the speed with which the plaintiff recovered from surgery.

By February of 2009, Gearhart was undergoing physical therapy. His physical therapist noted that he displayed "good body mechanics for bending and lifting for household activities" (HL0184), and described his rehabilitation progress as "good" (HL0221).

On April 2, 2009, Dr. Weaver advised Gearhart to continue physical therapy "as is for 1 month more." (HL0177). On the same date, Dr. Weaver noted that Gearhart had "done well after a decompression and stabilization procedure," that his back pain was "essentially gone," and that Gearhart was "very delighted with the results." (HL0249). Dr. Weaver further remarked that Gearhart's therapy had been very successful and that he would continue therapy for another month. Dr. Weaver concluded by noting that he "anticipate[d] [Gearhart] going back to work probably in late May or early June." (HL0249).

On April 29, 2009, Gearhart applied for long-term disability benefits under a group policy issued by Hartford Life. Gearhart indicated that he had been unable to work since November 4,

2008 due to back pain and numbness in his legs, and that he was uncertain as to when he would be able to return to work.

On the following day, Gearhart was examined by Dr. Weaver. In the examination notes, Dr. Weaver commented that the plaintiff was "actually doing very well," that he "wishe[d] to return back to work on the 1st of June," and that he would be "given . . . a note accordingly." (HL0269). Dr. Weaver pointed out that, upon returning to work, Gearhart "will be deconditioned for the kind of activity he does at work, and will have obviously myofascial pain from that, but . . . he should do quite well if he sticks with it for several months after he returns to work." (HL0269). Dr. Weaver also completed a "Disability Certificate" on which he indicated that Gearhart "may return to work on Monday, June 1, 2009 to regular duties." (HL0270).

The long-term disability policy issued by Hartford Life states that it "provides You with long term income protection if You become Disabled from a covered injury, sickness or pregnancy" (HL0008), and that the benefits will stop on "the date You are no longer Disabled" (HL0013). The policy defines "Disabled" as follows:

> Disability or Disabled means You are prevented from performing one or more of the Essential Duties of:
>
> (1) Your Occupation during the Elimination Period;
>
> (2) Your Occupation, for the 12 month(s) following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-Disability Earnings; and
>
> (3) After that, Any Occupation.

(HL0020). The policy then defines "Your Occupation" as "Your Occupation as it is recognized in the general workplace. Your occupation does not mean the specific job You are performing for a specific employer or at a specific location." (HL0023).

By letter dated June 25, 2009, Hartford Life advised Gearhart that it had approved his claim for long-term disability benefits through May 31, 2009. However, the insurer indicated that no further benefits would be paid beyond that date since the plaintiff had been released to return to work by his treating physician:

> Dr. Weaver released you to return to work at your regular duties effective 06/01/2009. Therefore, it is our determination that you no longer meet the policy definition of Totally Disabled and no further benefits are payable beyond 05/31/2009. We wish you well in your return to work!

(HL0131).

In the meantime, Ecolab refused to allow Gearhart to return to work and insisted that he undergo a functional capacity evaluation (FCE) by a physical therapist. According to the FCE report, which is dated June 28, 2009, Gearhart demonstrated the ability to lift a maximum of 35 pounds with frequent lifting of no more than 20 pounds (HL0139).

Ecolab had the FCE report reviewed by its consulting physician, and the physician reported back to Ecolab by letter dated July 8, 2009. In the letter, the physician opined that Gearhart was unable to return to his position with Ecolab without accommodation. The physician emphasized that the FCE report contained restrictions that would interfere with Gearhart's ability to perform the essential functions of his particular job, including the lifting limitations outlined in the report.

By letter dated July 15, 2009, Ecolab advised Gearhart that it was unable to accommodate the restrictions identified by the consulting physician, and that Gearhart would "need to remain on long term disability." (HL0124). The employer emphasized, however, that it was its understanding that the restrictions were "not permanent." (HL0124).

On August 3, 2009, Gearhart appealed Hartford Life's decision to terminate his long-term disability benefits. To support his appeal, Gearhart submitted the FCE report and the letter from Ecolab's consulting physician. Gearhart also submitted a new letter from Dr. Weaver, dated July 27, 2009. In the letter, Dr. Weaver indicated that he had reevaluated the plaintiff on that date, and that, upon review of the FCE report, he was of the opinion that the plaintiff "should be granted an extension of [the plaintiff's] long term disability benefits." (HL0126). Dr. Weaver also noted that he had prescribed an additional eight weeks of physical therapy.

Hartford Life issued a final decision letter on August 19, 2009, in which it upheld its decision to terminate Gearhart's long-term disability benefits. In so doing, the insurer emphasized, for the first time, that it had performed an occupational analysis of the plaintiff's position with Ecolab, and that it was of the opinion that the plaintiff could perform the essential duties of his occupation as it is performed in the national economy:

> ... We have completed our appeal review of this claim and have determined that you are not Disabled for Your Occupation . . . as it is classified in the national economy by the United States Department of Labor's Dictionary of Occupational Titles (DOT).
>
> . . . .
>
> The policy defines Your Occupation as follows: "Your Occupation means Your Occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job you are performing for a specific employer or at a specific location."

> An Occupational Analysis of Your Occupation of Service Professional with Ecolab was conducted on May 8, 2009. Your Occupation as it is performed in the national economy is classified as a combination of Sales Route Driver and Electrical Appliance Servicer. The physical demands of Your Occupation as it is performed in the national economy is medium level work.
>
> With regard to bending at the waist, this is considered to be stooping according to the United States Department of Labor's Dictionary of Occupational Titles (DOT). The stooping requirement for Your Occupation as it is performed in the national economy is frequent.
>
> According to the Functional Capacity Evaluation (FCE) report dated June 28, 2009, you demonstrated the following level of functionality: frequent (34-66 percent) forward bending/standing, frequent repetitive forward bending, constant (67-100 percent) crouch-deep static, frequent repetitive squat, and constant rotation both sitting and standing.
>
> . . . .
>
> You demonstrated the ability to lift up to 35 pounds with no frequent lifting of more than 20 pounds. This is defined by the DOT as medium level lifting capability.
>
> In summary, the bending/stooping requirement of Your Occupation as performed in the national economy is frequent which is the same level demonstrated in the FCE report. The same applies to your lifting capability. The reason you cannot return to work is an employment issue rather than a Disability issue according to the way the Policy is written. Since you do not meet the Policy definition for Your Occupation, the termination of your claim was correct.
>
> Based upon our review, the preponderance of the evidence supports your ability to perform the Essential Duties of Your Occupation as defined by the Policy. As such, you do not meet the definition of Disability beyond May 31, 2009, and the decision to terminate your claim was correct.

(HL0095). Gearhart was further advised that Hartford Life's decision was final, that the insurer was closing its record, and that no further review would be conducted with respect to his claim.

On May 25, 2010, Gearhart filed the instant action in the Circuit Court for the County of Roanoke. The action was removed to this court on June 17, 2010. The parties subsequently filed cross-motions for summary judgment, which were heard on November 2, 2010. The motions are now ripe for review.

## Standard of Review

The parties agree that the disability policy grants Hartford Life "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the [policy]" (HL0028) and, thus, that the plan administrator's decision is reviewed for abuse of discretion. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Under an abuse of discretion standard, an administrator's decision will not be disturbed if it is reasonable, even if this court would have come to a different conclusion. Metro. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008). A decision is reasonable if it "is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Brogan v. Holland, 105 F.3d 158, 161 (4th Cir. 1997) (internal citation and quotation marks omitted).

## Discussion

In challenging the termination of his long-term disability benefits, Gearhart advances two primary arguments. First, Gearhart argues that Hartford Life erred in interpreting the long-term disability policy to permit the company to look beyond the requirements of the specific position that Gearhart held with Ecolab to determine whether he was disabled from his own occupation. Gearhart also argues that because Hartford Life did not provide its occupational analysis in the initial decision letter, he was denied a full and fair review. For the following

reasons, the court disagrees with Gearhart's first argument but finds the second argument persuasive.

I.      **Hartford Life's Interpretation of the Policy**

As previously stated, the group policy defines disabled or disability as being "prevented from performing one or more of the Essential Duties of... Your Occupation." (HL0020). The policy then defines "Your Occupation" as "Your Occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job You are performing for a specific employer or at a specific location." (HL0023).

When Gearhart appealed the termination of his long-term disability benefits, Hartford Life applied the foregoing policy language and the Department of Labor's Dictionary of Occupational Titles (DOT) to conclude that Gearhart's occupation involved medium-duty work. In moving for summary judgment, Gearhart contends that Hartford Life erred in its analysis, since his position actually required him to do heavy-duty work, including frequently lifting up to 50 pounds and occasionally lifting up to 100 pounds. The court agrees with Hartford Life, however, that the actual requirements of Gearhart's position are not controlling, and that the insurer is permitted to utilize the Dictionary of Occupational Titles to determine how a claimant's occupation is generally performed.

Unlike the disability policies reviewed in the decisions cited by Gearhart, the Hartford Life policy defines the term "Your Occupation" using a national standard. Cf. Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d 264, 268 (4th Cir. 2002); Greene v. Reliance Standard Life Insurance Co., 2004 U.S. Dist. LEXIS 23401, at *2 n.1 (W.D. Va. Oct. 26, 2004). The plan language clearly allows Hartford Life to look beyond the requirements of the specific job that

Gearhart held with Ecolab and examine how the job "is recognized in the general workplace." (HL0023). When performing this analysis, Hartford Life is entitled to make use of the occupational definitions contained in the DOT. See, e.g., Stiltz v. Metro. Life Ins. Co., 244 F. App'x 260, 264 (11th Cir. 2007) (holding that the actual requirements of the plaintiff's position were not controlling in light of the insurance plan's broad definition of the term "occupation," and that the insurer "was entitled to rely on the Dictionary of Occupational Titles"); Dionida v. Reliance Standard Life Ins. Co., 50 F. Supp. 2d 934, 939 n.4 (N.D. Cal. 1999) (noting that the DOT is "widely and routinely used to define 'occupations' in the U.S. economy" and that it is "reasonable for plan administrators, and courts, to use it" in making disability determinations under ERISA). "To hold otherwise would render meaningless the express language in the contract exempting [Hartford Life] from looking at an insured's specific job duties." Green v. Reliance Standard Life Ins., 2009 U.S. Dist. LEXIS 57340, at *19 (S.D. Ga. July 7, 2009).

## II. Hartford Life's Procedural Violation

While the court agrees with Hartford Life's interpretation of the policy's "Your Occupation" provision, the court nonetheless concludes that the insurer failed to comply with ERISA's notice and appeal requirements when it issued its final decision and, thus, that the case must be remanded to the plan administrator. Under ERISA, an employee benefit plan is required to provide "adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial." 29 U.S.C. § 1133. The plan is further required to "afford a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by the appropriate named fiduciary of the decision denying the claim." Id. The regulations implementing these requirements provide

that a full and fair review includes "the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits." 29 C.F.R. § 2560.503-1(h)(2). "The claimant must also be given reasonable access to documents relevant to [his] claim, and the resulting review must take into account all relevant information submitted by the claimant." Gagliano v. Reliance Std. Life Ins. Co., 547 F.3d 230, 235 (4th Cir. 2008) (citing 29 C.F.R. § 2560.503-1(h)(1-2)).

The safeguards set forth in 29 U.S.C. § 1133 and the implementing regulations "'have been read as ensuring that a full and fair review is conducted by the administrator, that a claimant <u>is enabled to prepare an appeal for further administrative review</u> or recourse to the federal courts, and that the courts can . . . review[] a claim denial.'" Hall v. Metro. Life Ins. Co., 259 F. App'x 589 (4th Cir. 2007) (emphasis in original) (quoting Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 232-233 (4th Cir. 1997)). For that reason, the United States Court of Appeals for the Fourth Circuit has held that a plan administrator may not add, in its final decision, a new rationale for the denial of benefits without complying with the requisite notice and appeal requirements.[2] See Gagliano, 547 F.3d 230 at 236 (holding that an appeal decision was an "initial denial" subject to ERISA's notice and appeal requirements, since it contained a new basis for denying the plaintiff's claim for benefits); see also Gelumbauskas v. USG Corp. Ret. Plan Pension and Inv.

---

[2] For the same reason, the Fourth Circuit has also held, albeit in two unpublished decisions, that judicial review is limited to the rationale set forth in the initial denial of benefits. See Hall v. Metro. Life Ins. Co., 259 F. App'x 589, 593 (4th Cir. 2007) ("The statutory and regulatory text and the case law demand that judicial review take into account only reasons for an adverse benefits determination offered in the initial denial notice, because these are the only rationales on which a claimant might have arguably been given a 'full and fair' opportunity to respond during the administrative process."); Thompson v. Life Ins. Co. of N. Am., 30 F. App'x 160, 164 (4th Cir. 2002) ("A district court's review is limited to whether the rationale set forth in the initial denial notice is reasonable.").

Comm., 2010 U.S. Dist. LEXIS 48347, at *10 (D. Md. May 17, 2010) (holding that an insured was denied the opportunity for a full and fair review where the appeal denial rested on grounds "never before considered"); Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 974 (9th Cir. 2006) ("[A]n administrator that adds, in its final decision, a new reason for denial, a maneuver that has the effect of insulating the rationale from review, contravenes the purpose of ERISA."); McCartha v. Nat'l City Corp., 419 F.3d 437, 446 (6th Cir. 2005) (holding that a plan administrator was not in substantial compliance with § 1133 where the initial denial notice omitted one of the grounds later relied on for the denial of benefits).

In the instant case, it is clear from the record that Hartford Life's final decision included a new rationale for terminating Gearhart's long-term disability benefits and, thus, that it was "an initial denial" subject to ERISA's notice and appeal requirements. Gagliano, 547 F.3d at 236. As previously summarized, Gearhart was initially informed that his long-term disability benefits would end on May 31, 2009, since his treating physician had released him "to return to work at [his] regular duties effective 06/01/2009." (HL0101). After Gearhart submitted evidence indicating that he could not perform his regular duties, Hartford Life shifted its focus from Gearhart's ability to perform his actual job to his ability to fulfill the duties of his occupation as it is performed in the national economy. In its final decision, Hartford Life advised Gearhart, for the first time, that it had conducted an occupational analysis of Gearhart's position with Ecolab, and that it had determined that the physical demands of the position, as it is performed in the

11

national economy, constitute "medium level work."[3] (HL0095). Since the FCE report that Gearhart submitted on appeal indicated that he was capable of performing work at the medium exertional level, Hartford Life concluded that Gearhart could perform the essential duties of his occupation as it is performed in the national economy.

In opposing remand, Hartford Life argues that while "the analysis was new, the . . . reason for the [final] claim denial was unchanged – Mr. Gearhart was not disabled from his 'own occupation.'" (Br. in Supp. of Summ. J. at 27). As previously stated, however, ERISA requires "adequate notice . . . setting forth the <u>specific</u> reasons for . . . denial." 29 U.S.C. § 1133 (emphasis added). Here, the specific reason for the termination of benefits provided in the initial letter focused solely on the fact that Gearhart had been released to return to his actual position with Ecolab. The letter did not cite to the policy's much broader definition of "Your Occupation" or otherwise advise the plaintiff that his entitlement to benefits hinged on whether he could perform the essential duties of his occupation as it is performed in the general workplace. Moreover, the letter did not advise the plaintiff of the occupational analysis that Hartford Life had already performed or provide any indication that the insurer had classified his occupation as requiring only medium exertion. Consequently, Gearhart was denied the "opportunity to make a meaningful administrative record" with respect to the new rationale set

---

[3] In its brief, Hartford Life emphasizes on multiple occasions that the occupational analysis was undertaken during the course of the administrative appeal, and that "the ERISA regulations do not require a plan administrator to provide a claimant the opportunity to provide 'rebuttal evidence' to a report generated during administrative appeal . . . ." (Br. in Supp. of Summ. J. at 26). According to its final decision letter, however, the occupational analysis was conducted on "May 8, 2009" (HL0095), more than six weeks before Hartford Life issued its <u>initial</u> decision letter on June 25, 2009. As previously stated, the initial decision letter made no reference to any occupational analysis performed by the insurer.

12

forth in the final decision letter, and "the appropriate remedy is to remand the matter to the plan administrator so that a 'full and fair review' can be accomplished." Gagliano, 547 F.3d at 235, 240.

### Conclusion

For the reasons stated, the parties' cross-motions for summary judgment will be denied, and the plaintiff's claim for long-term disability benefits will be remanded to Hartford Life for a full and fair review regarding the new basis for the termination of benefits contained in the final decision letter. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 16th day of November, 2010.

_____
Chief United States District Judge